UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

WILLIAM JONES,

    Defendant.

_____/

Case No. 08-cr-20385

Paul D. Borman
United States District Judge

Paul J. Komives
United States Magistrate Judge

**OPINION AND ORDER (1) DENYING DEFENDANT'S OBJECTIONS (Dkt. No. 61); (2) ADOPTING IN PART THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, AND (3) ORDERING AN EVIDENTIARY HEARING**

On June 5, 2009, William Jones ("Defendant") pled guilty to attempting to possess with intent to distribute cocaine ("Count 1")[1] and two counts of unlawful use of a communication facility ("Counts 2 and 3").[2] On October 22, 2009, the Court held a sentencing hearing, wherein the Court sentenced Defendant to concurrent terms of incarceration of 80 months under Count 1, and 48 months for Counts 2 and 3. Defendant did not appeal his sentence.

On April 3, 2010, Defendant filed a motion to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255. (Dkt. No. 39.) However, Defendant, acting *pro se*, withdrew this motion on June 1, 2010, claiming that it was filed without his knowledge or consent. (Dkt. No. 43.) On July 19, 2010, Defendant filed a motion to amend his motion to vacate. (Dkt. No. 46.) The

---

[1] 21 U.S.C. §§ 841(a)(1) and 846.

[2] 21 U.S.C. § 843(b).

1

Court referred Defendant's motion to the Magistrate Judge. (Dkt. No. 47.) On October 18, 2010, before the Magistrate Judge had ruled regarding Defendant's motion to amend, Defendant filed a second motion to vacate sentence under 28 U.S.C. § 2255. (Dkt. No. 50.) The Court referred Defendant's second motion to vacate to the Magistrate Judge (Dkt. No. 52), who denied Defendant's motion to amend on November 10, 2010. (Dkt. No. 53.)

On May 9, 2011, the Magistrate Judge filed a Report and Recommendation that Defendant's motion to vacate be granted in part and denied in part. (Dkt. No. 60.) However, the Report and Recommendation was apparently not mailed to Defendant until June 14, 2011. Defendant has attached to his Objections a photo copy of the envelope that the Report and Recommendation was sent in, reflecting that it was received by the prison mail service where Defendant is incarcerated on June 17, 2011. Defendant filed objections on June 30, 2011. (Dkt. No. 61.) The government did not respond.

## I. BACKGROUND

The Court adopts the facts as summarized in the Magistrate Judge's Report and Recommendation at 1-5. The Court addresses *infra* Defendant's objections to certain factual findings in the Report and Recommendation at 11.

## II. ANALYSIS

### A. Ineffective Assistance of Counsel Claim

Defendant has not objected to the Magistrate Judge's finding regarding the ineffective assistance of counsel claim.

The Court agrees with the Magistrate Judge's finding that there are conflicting affidavits regarding whether Defendant told his counsel that he did not desire an appeal. The Court will

therefore order an evidentiary hearing pursuant to 28 U.S.C. § 2255. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003). The Court will appoint counsel to represent Defendant at the evidentiary hearing.

**B. Sentencing Claims**

*1. Claim Regarding § 3B1.1(c)*

At the August 12, 2010 sentencing hearing, the United States sought a two-point enhancement to Defendant's sentencing guideline range, alleging that Defendant was "an organizer, leader, manager, or supervisor" within the meaning of U.S.S.G. § 3B1.1(c). (Aug. 12, 2010 Hr'g Tr. 67, Dkt. No. 48.) The Court heard testimony, in the form of both direct examination by the government and cross examination by Defendant's attorney, from Drug Enforcement Administration Agent Steven Temprano. Agent Temprano, who was part of the undercover sting operation that resulted in Defendant's arrest, testified as follows:

> Q    Let me ask you, at this point in your opinion in the car having the discussions, tell us what the involvement was of the Defendant's sister, Sheri Jones?
>
> A    She went to retrieve the money that was concealed in her hotel room. She brought the money to me, showed me the money so that I could verify it. . . .
>
> ( . . . . )
>
> Q    And so he says he's going to have what happen, in terms of showing money?
>
> A    He says that he's going to have the girl that came with him go pick up the money because she was taking care of it for security reasons.
>
> Q    Let me ask you that. In your experience, is that something that, having someone else handle the money, is that

3

> something that you've run across before in drug negotiations?
>
> A   Very frequently.
>
> (....)
>
> Q   All right. In any event, at some point you observed Sheri Jones; is that correct?
>
> A   Yes.
>
> Q   And where is she coming from?
>
> A   When I saw her, I saw her coming, from what I thought, was the entrance to the Best Value Hotel. And she walked towards my car, and she was walking, which struck me as odd. She was making believe she was making a phone call while she was looking around, while she wasn't talking to anybody on the phone. So then she walked to my car.
>
> Q   What was the significance of that, someone pretending to make a call while they're looking around? As an undercover agent, what did that mean to you?
>
> A   That she was either looking for criminals that may want to rob them or look for the police.
>
> Q   So after the fake phone call, she comes to the car, and what does she do?
>
> A   She goes to the passenger side where Mr. Jones was sitting. Mr. Jones rolls down the window. She opens her purse, shows me her white bag that was inside the purse, puts the purse on Mr. Jones' lap, opens the white bag and shows me bundles of money that are inside the bag.
>
> Q   All right. So it was Miss Jones, she brought the purse, correct?
>
> A   Yes.

(Hr'g Tr. 31-33.)

The Court found as follows regarding the § 3B1.1(c) enhancement:

> I think based on the evidence that the aggravating role for two-point enhancement is appropriate. I think he used her in this transaction, flashing the cash, and she got a great break from the government in not being prosecuted flashing $28,000 and dealing in a matter with a drug transaction. He was using her to participate in his enterprise to get the kilos of drugs. So we'll add that too. . . .

(Hr'g Tr. 71.)

Defendant argues that the Court's finding regarding the enhancement is not supported by the evidence.

The Magistrate Judge's Report and Recommendation found that Defendant's argument was unavailing because, even if the Court had not allowed the two-point enhancement, Defendant's sentence would still be within the resulting sentencing range. (Report and Recommendation 11); *see Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) (noting that "an error in the application of the Sentencing Guidelines does not warrant collateral relief under § 2255 absent a complete miscarriage of justice.") (citation omitted). However, the Magistrate Judge erred in calculating Defendant's total offense level.

At the sentencing, the Court found Defendant's base offense level was 30. (Hr'g Tr. 68.) With the § 3B1.1(c) enhancement, Defendant's offense level became 32. (Hr'g Tr. 71.) Defendant received a three-point reduction for acceptance of responsibility pursuant to § 3E1.1(a) and (b), bringing the sentencing level to 29. (Hr'g Tr. 75.) The Court then allowed a two-point variance, bring Defendant's total offense level to 27. (Hr'g Tr. 87.)

If the Court had not allowed the § 3B1.1(c) enhancement, Defendant's base offense level would remain at 30. He would still have received a three-point reduction for acceptance of

5

responsibility, bringing his sentencing level to 27. Defendant would also have been eligible for a two-point "safety valve" decrease under § 5C1.2, bringing his offense level to 25.[3]

The Magistrate Judge concluded that Defendant failed to show "a complete miscarriage of justice," because "[t]he effect of the trial court finding § 3B1.1(c) inapplicable would have been to place defendant at a total offense level of 27[,]" which was the range in which Defendant was actually sentenced. (Report and Recommendation 11.) This conclusion was based on the erroneous calculation that Defendant's total offense level without the § 3B1.1(c) enhancement would have been 27.

At an offense level of 25, Defendant's sentencing range would have been 57-71 months. *See* U.S.S.G. Sentencing Table. Defendant was sentenced for 80 months. (Hr'g Tr. 87.) Any amount of additional jail time implicates the Sixth Amendment. *Glover v. United States*, 531 U.S. 198, 203 (2001). Defendant has therefore established sufficient prejudice to warrant review under § 2255. *See Grant v. United States*, 72 F.3d 503, 505-06 (6th Cir. 1996).

However, Defendant has not demonstrated that the Court erred in applying the § 3B1.1(c) sentence enhancement. Defendant argues that Agent Temprano's testimony did not provide sufficient evidence to show that Defendant "exerted control over at least one individual within a criminal organization." *United States v. Gort-DiDonato*, 109 F.3d 318, 321 (6th Cir. 1997). The Court disagrees. Agent Temprano testified that Defendant told him he was "going to have the girl that came with him go pick up the money because she was taking care of it for security reasons." (Hr'g Tr. 32.) Although Agent Temprano could not recall whether Defendant called his sister on the

---

[3]Defendant was ineligible for the "safety valve" decrease due to the Court finding Defendant had a leadership role in the offense under § 3B1.1(c), but the Court allowed a two-point variance to compensate for this.

phone or left the car to contact her, he did state that after Defendant requested that she show Agent Temprano the money, she did so. This is sufficient evidence showing that Defendant exercised direct control over his sister within a criminal organization. *Gort-DiDonato*, 109 F.3d at 321.

Accordingly, Defendant is not entitled to § 2255 relief on this issue.

## 2. *Claim Regarding Pending State Charges*

Defendant argues that his sentence was based, in part, on consideration of pending state charges in Pennsylvania, which were included in the pre-sentence report. Defendant has submitted evidence showing that these charges were dismissed after the October 22, 2009 sentencing.

At the sentencing, the Court noted that "[Defendant] does have the charges against him in Philadelphia, which he's presumed innocent of, and the Court will not assume he's guilty of them, but the history and characteristics . . . shows an individual who has contacts with the law." (Hr'g Tr. 86.) The Magistrate Judge found as follows with regard to this claim: "Because defendant's guilt or innocence on the pending Pennsylvania charges did not affect the Court's sentence, his subsequent acquittal provides no basis for resentencing." (Report and Recommendation 12.)

In his Objections, Defendant argues that "the sentencing guideline error coupled with Jones' innocence place the Sentencing Court's title 18 U.S.C. §3553(a) analysis in a fundamentally different posture." (Obj. 4.) Defendant argues that consideration of the state law claims combined with the § 3B1.1(c) enhancement resulted in an unfair sentence. However, as noted *supra*, the Court did not err in applying the § 3B1.1(c) sentencing enhancement. Further, the Court did not err in taking into account Defendant's pending state law charges when imposing his sentence. *United States v. Kingsley*, 241 F.3d 828, 833 n. 7 (6th Cir. 2001) (noting that a sentencing court may consider prior criminal behavior by the defendant if it is "supported by information derived from a reliable source,

. . . even if that prior criminal conduct did not lead to a criminal conviction."); *United States v. August*, 984 F.2d 705, 713 (6th Cir. 1992) (holding that a sentencing court may take into consideration acquitted conduct when determining the defendant's sentence); *United States v. Alford*, 332 Fed. Appx. 275, 284-85 (6th Cir. 2009) (finding that sentencing court "did not err in considering the pending charges while selecting a sentence within the advisory guideline range.").

### III. CONCLUSION

For the reasons stated above, the Court will **DENY** Defendant's Objections, **ADOPT** in part the Report and Recommendation, and **ORDER** an evidentiary hearing on Defendant's ineffective assistance of counsel claim.

**IT IS SO ORDERED.**

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: 10-25-11